CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

FEB 03 2009

JOHN F. CORCORAN, CLERK
BY: /s/ [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW TUNNELL,<br>        *Defendant.* | CRIMINAL NO. 6:08CR00010<br>CRIMINAL NO. 6:08CR00028<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

On October 10, 2008, Matthew Tunnell pled guilty to five counts of child pornography charges. At Tunnell's sentencing hearing, I heard arguments from both parties concerning the appropriate sentences of imprisonment and supervised release. After carefully considering the arguments presented at the hearing, the pre-sentence investigation report, the sentencing memoranda, and the factors set forth in 18 U.S.C. § 3553(a), I imposed a sentence of, among other things, 120 months imprisonment and lifetime supervised release. Because this sentence is lower than the advisory Guidelines range of 168 to 210 months, I write separately from the judgment order to explain the reasons why such a sentence was warranted in Tunnell's case.

## I. BACKGROUND

In 2006, acting upon information provided by the Virginia Office of the Attorney General, the U.S. Postal Service ("USPS") commenced an investigation of Tunnell on the suspicion that he had previously received or attempted to receive materials containing child pornography.[1] A USPS investigator, posing as the operator of a fictitious video company, began contacting Tunnell by letter to solicit his interest in obtaining a catalog of videos of child

---

[1] After holding hearings concerning the sexual exploitation of children, a Congressional subcommittee provided the Attorney General of Virginia with the names and addresses of individuals in the state who had subscribed to or attempted to subscribe to a specific child pornography website. After discovering that Tunnell had attempted to pay

pornography. After contacting the investigator to obtain a catalog, Tunnell ultimately ordered four videos containing child pornography. On May 30, 2007, after a controlled delivery of three DVDs containing child pornography was made to Tunnell's Lynchburg residence, a search warrant was executed on his home. The search uncovered two computers with hard drives containing approximately 1,000 images of child pornography, including at least twenty images of prepubescent minors engaged in sexually explicit conduct. During an interview that same day, Tunnell admitted that he had purchased movies and pictures containing child pornography for at least the previous five years and had exchanged child pornography and nude images of young boys with another individual. Tunnell was not arrested. Some time after the incident in Lynchburg, Tunnell moved into an apartment attached to his parents' residence in Bay Minette, Alabama, where he grew up and had previously lived as a young adult. Tunnell did not inform his parents of the incident in Lynchburg and the pending child pornography charges.

On February 27, 2008, based on the evidence uncovered in the search of Tunnell's Lynchburg residence, a grand jury in this District returned an indictment charging Tunnell with one count of receipt of child pornography and one count of possession of child pornography. The next day, authorities arrested Tunnell on the charges at his apartment in Bay Minette. After he agreed to be interviewed and consented to a search, authorities uncovered additional DVDs and CDs containing child pornography in Tunnell's apartment. While Tunnell no longer owned a personal computer, he had downloaded child pornography off of his father's computer onto the DVDs and CDs that were kept in his apartment. Based on the evidence that was uncovered in this search of Tunnell's apartment, a grand jury in the Southern District of Alabama returned an indictment charging Tunnell with two counts of possession of child pornography and one count

---

for access to the website on five different occasions between February 25, 2004 and March 3, 2004, the Virginia Office of the Attorney General turned over the investigation of Tunnell to the USPS.

of receipt of child pornography. On October 10, 2008, these charges were transferred to this District.

Tunnell pled guilty to all counts of both indictments. Under the terms of the written plea agreement, Tunnell and the Government agreed on a base offense level of 22 and the following enhancements: a two-level increase pursuant to U.S.S.G. § 2G2.2(b)(2) because the pornographic material involved a prepubescent minor; a five-level increase pursuant to U.S.S.G. § 2G2.2(b)(3)(B) because the offense involved distribution for the receipt of a thing of value; a four-level increase pursuant to U.S.S.G. § 2G2.2(b)(4) because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence; a two-level increase pursuant to U.S.S.G. § 2G2.2(b)(6) because the offense involved the use of a computer; and a five-level increase pursuant to U.S.S.G. § 2G2.2(b)(7)(D) because the offense involved 600 or more images. The Government also agreed to recommend a two-level decrease in offense level in the event that Tunnell satisfactorily passed a lie-detector test concerning whether he had previously had sexual relations with a minor. Because Tunnell was deserving of this two-level decrease and also because he qualified for a three-point decrease for acceptance of responsibility, I found the total offense level to be 35. Given Tunnell's criminal history category of I, the corresponding Guidelines range for the total offense level was 168 to 210 months. Because I determined that a sentence at the low end of the Guidelines range was greater than necessary to achieve the goals set forth in 18 U.S.C. § 3553(a), I imposed a sentence of 120 months and lifetime supervised release.

## II. DISCUSSION

The U.S. Sentencing Guidelines are now advisory. *Gall v. United States*, 128 S. Ct. 586, 594 (2007). While they "should be the starting point and the initial benchmark" for calculating a sentence, they "are not the only consideration" that a district court should entertain at sentencing.

*Id.* at 596. After giving both the defendant and the Government an opportunity to argue for an appropriate sentence, a district judge should consider the factors set forth in 18 U.S.C. § 3553(a). *Id.* Section 3553(a) implores a court to "impose a sentence sufficient, but not greater than necessary," to comply with the four different purposes of punishment: deterrence, rehabilitation of the Defendant, retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), and incapacitation ("to protect the public from further crimes of the defendant."). 18 U.S.C. § 3553(a)(2). In making such a determination, a district court must also consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," the kinds of sentences available, the advisory Guidelines range, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §§ 3553(a)(1)-(6). A court "may not presume that the Guidelines range is reasonable" and "must make an individualized assessment based on the facts presented" at sentencing. *Gall*, 128 S. Ct. at 596-97. I sentenced Tunnell to a term of imprisonment below the advisory Guidelines range because I believe the Guidelines called for a sentence that was in excess of what was necessary to address the sentencing factors set forth in 18 U.S.C. § 3553(a).[2] Given the nature and circumstances of this offense and the history and characteristics of Tunnell, I think that a sentence of 120 months imprisonment is sufficient to serve the goals of deterrence, rehabilitation, incapacitation, and retribution.

Tunnell is thirty-three years old and has no criminal history. At the age of two, he contracted spinal meningitis and has since suffered from speech and developmental difficulties.

---

[2] At the sentencing hearing, I stated that the five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(B) significantly over-punished Tunnell for his offense conduct. The enhancement was based upon Tunnell's statement that he had sent nude pictures of boys to an individual he met online in exchange for other child pornography on at least one occasion. As this Memorandum Opinion explains, however, irrespective of that reason, a Guidelines range

4

Because of these difficulties, Tunnell was unable to graduate from high school and instead received a "certificate of completion." His IQ of 85 places him in the "low-average" range. While Tunnell has the benefit of a supportive network of family members and associates from his hometown church in Alabama, he has been unable to control his compulsions to view child pornography. Until the search of Tunnell's Alabama apartment on February 28, 2008, Tunnell's parents were completely unaware of his problem and had consequently failed to take any preventive measures to prohibit him from accessing computers or the internet.

Given Tunnell's personal characteristics and history, I think that ten years in prison is sufficient, but not greater than necessary, to serve the purposes of punishment set forth in § 3553(a). A sentence in the Guidelines range would be almost *double* that of most persons who have committed similar, or worse, child pornography related sentences. A sentence of 120 months imprisonment, by contrast, appropriately reflects the seriousness of Tunnell's conduct and respects Congress' abhorrence for child pornography-related offenses. The sentence sends a clear message to Tunnell and other consumers of child pornography that the possession and receipt of such material are serious offenses that harm innocent young individuals. The accompanying sentence of lifetime supervised release, combined with Tunnell's strong network of family and church support, significantly reduces his risk of recidivism. The counseling that Tunnell will receive while in prison will also help rehabilitate him so that he will be able to control his compulsions to view child pornography in the future. Given Tunnell's personal history and characteristics and the circumstances of this case, I think that a sentence of 120 months imprisonment and lifetime supervised release serves the purposes of punishment set forth in § 3553(a) and adequately reflects the seriousness of Tunnell's offenses. For these reasons, I

---

sentence would be in excess of what is necessary to address the factors set forth in § 3553(a).

5

decline to impose a term of imprisonment within the advisory Guidelines range. A judgment order will follow.

The Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to Tunnell and to all counsel of record.

It is so **ORDERED**.

Entered this 3rd day of February, 2009.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE